MICHAEL H. GARVEY & another *vs.* WALTER G. WESSON & others.

Suffolk.     March 26, 1926. — December 21, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Corporation,* Foreign, Officers and agents.   *Interstate or Foreign Commerce.*

While the allegation in a declaration in an action of contract to fix upon officers of a foreign corporation liability described in G. L. c. 181, § 5, must show that the contract of the corporation upon which the plaintiff relied as the basis of the statutory liability was not a contract relating to interstate commerce, where the allegations are specific and detailed and contain an allegation, "that said contract and the debt of said corporation hereinbefore recited did not relate to interstate commerce," such allegation is more than an allegation of a conclusion of law, and, taken with the description of the acts contemplated to be performed and the allegations in regard to what was done in performance, is an allegation of fact.

*It seems,* that transactions which are, in and of themselves, foreign commerce, would not form the basis for the liability, created by G. L. c. 181, § 5, of officers of a nondomestic corporation.

The exception of debts and contracts which relate to interstate commerce, made by G. L. c. 181, § 5, does not necessarily except also such debts and contracts as relate to foreign commerce, and, therefore, officers of a foreign corporation, which is not engaged solely in foreign or interstate commerce and which has failed to do the acts required by the statute, are liable upon a contract of the corporation, made in Massachusetts, to advance money in Massachusetts to a person who is doing a general business here and who is engaged in a shipment of goods from

Massachusetts to a foreign country, under which the lender receives shipping documents, drafts, and bills of lading as security and undertakes to see that the goods are put on board ship, are insured, and that the freight is paid.

CONTRACT, with a declaration described in the opinion. Writ dated June 9, 1925.

Demurrers were filed by some of the defendants, and were heard by *Morton*, J., who overruled them and reported his ruling to this court for determination before further proceedings in the Superior Court.

*J. W. Burke*, (*W. J. Drew, E. L. Ryerson & J. C. Hannon* with him,) for the defendants.

*J. H. Morson*, for the plaintiff.

WAIT, J. The question here raised is, whether the demurrers were overruled rightly.

We must act upon the assumption that the facts alleged in the declaration are true, and are all the material facts. We can supply nothing by implication. In substance the demurrers rest upon the contention that the declaration does not set out a cause of action in either of its two counts. The declaration, which is very long, asserts a right to recovery against the defendants, jointly and severally, based upon St. 1918, c. 171, (see now G. L. c. 181, § 5). That statute requires certain foreign corporations before transacting business in this Commonwealth to do specified things, and provides that their officers who authorize or transact, and their agents who transact business in their behalf in this Commonwealth, if the corporation fails to do the acts required, shall "be liable, jointly and severally, in an action of contract, without prior proceedings against the corporation, for all debts and contracts of the corporations, except such as relate to interstate commerce, contracted or entered into within the Commonwealth or for the purpose of being performed therein, so long as such failure continues. Such failure shall not affect the validity of any contract with such corporation, . . ."

The declaration in its first count in substance alleged that in September, 1919, The Durrell Brothers Company, a corporation organized under the laws of Ohio, which maintained

a usual place of business at Boston, where it carried "on a business in said Boston of dealing in boots and shoes," entered into a contract with the plaintiffs, copartners engaged in the "business of exporting and forwarding agents" at Boston. By it the plaintiffs "agreed to finance . . . certain shipments of shoes by said corporation to France and to advance or procure the necessary amount of money to so finance said shipments and to act as forwarding agents of said shipments"; in return the corporation was to pay a commission and interest on the money advanced. The details of the proceedings contemplated and the methods to be pursued are set out with much minuteness. The count sets out the acts of the plaintiffs thereunder and alleges defaults of the corporation by which it became indebted to the plaintiffs in the amount of $72,646.46. The count then alleges that The Durrell Brothers Company at the time of making the contract, prior thereto, and at the day of the suit was a foreign corporation organized under the laws of Ohio, which maintains a usual place of business in Boston where it was carrying on its business; that said contract was entered into in Boston and was to be performed in the Commonwealth; that at the time of making the contract and when the debts and obligations were entered into and contracted, the corporation had not done the acts required by the statute (setting out the specific acts of failure) and had failed to comply with the statutes (enumerating them); that the defendants were directors, officers and agents of the corporation at the time the contract was made and that the debts and obligations accrued while such failure continued; that they authorized or transacted said business; "that said contract and the debt of said corporation hereinbefore recited did not relate to interstate commerce"; and that by virtue of St. 1918, c. 171, the defendants had become jointly and severally liable for said debts and contracts, and, therefore, owed the plaintiffs $72,646.46.

The second count in similar language set out a contract made in June, 1919, under which "the plaintiffs agreed to forward on account of said corporation certain shipments or consignments of boots and shoes to France and to advance

the necessary moneys and charges for freight and insurance on said shipments, which advances and charges said corporation agreed to repay the plaintiffs together with interest . . ."; alleged payments and advances of $4,313.06 which with interest the corporation had failed to repay; and with similar allegations in regard to the failure of the corporation to comply with the statutes and in regard to the relations of the defendants to the corporation, claimed the defendants owed the plaintiffs $5,820.03.

The defendants contend that no cause of action is set out, and that both counts are defective because they do not show that the debts and contracts of the corporation are intrastate commerce, and do show that they relate to foreign commerce.

There can be no doubt that the plaintiffs, who rest their case upon a statutory right, must set out in their declaration facts sufficient to show that they are within the statute. *Wright* v. *Boston & Maine Railroad,* 129 Mass. 440. Allegations of conclusions of law are not sufficient. When, as here, an exception is made part of the enacting clause of a statute, the pleader must show that his cause of action is not within the exception. *Commonwealth* v. *Hart,* 11 Cush. 130, 137. He need, however, allege only enough to constitute a *prima facie* case. The allegation that the contracts and debt of said corporation hereinbefore recited did not relate to interstate commerce, is here more than an allegation of a conclusion of law. Taken with the description of the acts contemplated to be performed and the allegations in regard to what was done in performance, it is an allegation of fact. Sufficient facts appear to enable the parties to understand and the court to pass upon the nature of the contract. They make it possible to decide whether the contract was one which constituted part of intrastate or of foreign commerce.

If the transaction was, in and of itself, foreign commerce, we have no doubt that the demurrers should have been sustained. This court has, in substance, determined that the statutes (Sts. 1884, c. 330; 1895, c. 157; 1900, c. 280; 1903, c. 437) which go to make up the present G. L. c. 181, § 5, are not to be taken to apply to foreign corporations engaged solely in interstate commerce. *Attorney General*

v. *Electric Storage Battery Co.* 188 Mass. 239, 240, 241, citing *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, *Norfolk & Western Railroad* v. *Pennsylvania,* 136 U. S. 114. They otherwise would be unconstitutional. The same reasoning applies in reference to a corporation engaged solely in foreign commerce. United States Const. Art. 1, § 8. A State statute which by its necessary operation directly interferes with or burdens such commerce is a prohibited regulation and is invalid regardless of the purpose for which it was enacted. *Schafer* v. *Farmers Grain Co.* 268 U. S. 189, and cases cited.

The exception of debts and contracts which relate to interstate commerce, made by the statute, does not necessarily except also such debts and contracts as relate to foreign commerce. Congress by its legislation has swept into interstate commerce many transactions which have only an incidental relation thereto; but which, by the exercise of that legislative power have been made part of interstate commerce, and, thereby, have been placed beyond the control of State legislation. It has not so dealt with foreign commerce, and until it acts, there is still opportunity for valid action by the State Legislature.

Had the Supreme Court of the United States decided that such transactions formed part of foreign commerce, or were so directly connected with it that any State legislation necessarily burdened or interfered with it, of course we should acquiesce. No congressional action and no decision of the Supreme Court of the United States has been called to our attention, however, which compels us to determine that a contract made in Massachusetts, to advance money in Massachusetts to a person who is doing a general business here and who is engaged in a shipment of goods from Massachusetts to a foreign country, is foreign commerce; or that it becomes foreign commerce when the lender receives shipping documents, drafts, and bills of lading as security, and undertakes to see that the goods are put on board ship, are insured, and that the freight is paid.

The transaction described in the declaration is connected with an adventure in foreign commerce; but it is not foreign

commerce any more than is marine insurance, *Hooper* v. *California*, 155 U. S. 648, or than the transactions at the stockyards described in *Hopkins* v. *United States*, 171 U. S. 578, were interstate commerce.

The contracts of the corporation are not interfered with. By the terms of the statute they are valid. The provisions here insisted upon do not place any liability upon the corporation. The obligation they impose is upon officers and agents. *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197. *Buck Stove & Range Co.* v. *Vickers*, 226 U. S. 205. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, and *Crutcher* v. *Kentucky*, 141 U. S. 47, cited by the defendants, do not seem to us controlling. This transaction, as presented by the pleadings, is unlike the transaction dealt with in *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282.

There is nothing in the declaration which indicates that the corporation concerned is engaged solely in either foreign or interstate commerce.

The demurrers were overruled properly, and the case must stand for trial.

*So ordered.*