PACIFIC WOOL GROWERS *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk. January 3, 1940. — February 3, 1940.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Corporation,* Foreign: what constitutes; Coöperative.

A "'coöperative corporation' non profit making," engaged in the wool business, in good standing as a subsisting corporation, organized and having its principal place of business in another State but with a usual place of business in this Commonwealth, was subject to the provisions of G. L. (Ter. Ed.) c. 181.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on August 10, 1939, for a writ of mandamus.

The petition was ordered dismissed by *Lummus,* J.

*R. Hall,* for the petitioner.

*P. A. Dever*, Attorney General, & *R. Clapp*, Assistant Attorney General, for the respondent, submitted a brief.

*G. E. Roewer & A. F. Reel*, by leave of court, submitted a brief as *amici curiae*.

Cox, J.   This is a petition for mandamus to require the respondent to accept appointment as attorney for service of process for the petitioner, and also to accept and file its charter, by-laws and certain financial papers, together with a filing fee under the provisions of G. L. (Ter. Ed.) c. 181. The petition was heard by a single justice upon the petition and answer, it being agreed that the facts set forth therein were true and that the sole question to be determined was whether the provisions of said c. 181 are applicable to the petitioner.   The single justice ordered the petition dismissed, but not on any ground of discretion, and the petitioner excepted.

From the agreed facts, it appears that the petitioner is a " ' coöperative corporation' non profit making," duly organized and existing under the laws of the State of Oregon, and that it is now in good standing as a subsisting corporation, with its principal place of business in Oregon and a usual place of business in this Commonwealth.   The purposes for which the petitioner was organized were to engage in the purchase and sale of wool and mohair and their products, to market and handle the same, and to engage in any activity in connection with this work, or incidental thereto, and in the financing of said work.   It is unnecessary to recite the facts as to the presentation for filing of the papers and documents referred to in §§ 3, 5 and 6, and of the filing fee required by § 23 of said c. 181, inasmuch as it is not contended that the respondent is not required to comply with the statutory provisions, if they are applicable to the petitioner.

The guiding principles when a statute is to be construed were stated by Chief Justice Rugg in *Commonwealth* v. *Welosky*, 276 Mass. 398, at pages 401, 402: "The words of a statute are the main source for the ascertainment of a legislative purpose.   They are to be construed according to their natural import in common and approved usage.   The

imperfections of language to express intent often render necessary further inquiry. Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part, and in the light of the Constitution and of the common law, to the end that they be held to cover the subjects presumably within the vision of the Legislature and, on the one hand, be not unduly constricted so as to exclude matters fairly within their scope, and, on the other hand, be not stretched by enlargement of signification to comprehend matters not within the principle and purview on which they were founded when originally framed and their words chosen. General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense." The General Court has enacted, among other things, that in construing statutes, words and phrases shall be construed according to the common and approved usage of the language, unless to do so would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute. G. L. (Ter. Ed.) c. 4, § 6.

G. L. (Ter. Ed.) c. 181, § 1, provides that the words "Foreign corporation" shall, except when otherwise specifically prescribed, mean a corporation, association or organization, except an insurance company or a corporation organized for a purpose for which domestic corporations can be organized under c. 180, which has been established, organized or chartered under laws other than those of the Commonwealth. Obviously, the petitioner is not an insurance company, and it is not contended that it is organized for a purpose for which domestic corporations can be organized under said c. 180. Section 3 of said c. 181, so far as material, provides in substance that "Every foreign corporation, which has a usual place of business in this commonwealth, . . . shall, before doing business in this

commonwealth, in writing appoint the commissioner [of corporations and taxation] and his successor in office to be its true and lawful attorney upon whom all lawful processes in any action or proceeding against it may be served, and in such writing shall agree that any lawful process against it which is served on said attorney shall be of the same legal force and validity as if served on the corporation, and that the authority shall continue in force so long as any liability remains outstanding against the corporation in this commonwealth. . . ." Section 5 of said c. 181 provides, so far as material, that "Every foreign corporation of the classes described in section three, before transacting business in this commonwealth, shall . . . file with the commissioner a copy of its charter, articles or certificate of incorporation, . . . a true copy of its by-laws, and a certificate . . . ." setting forth, among other things, "the amount of its capital stock, authorized and issued, the number and par value of its shares, the amount paid in thereon to its treasurer, and, if any part of such payment has been made otherwise than in money, the details of such payment, so far as practicable, in accordance with section ten of chapter one hundred and fifty-six." Penalties are provided therein for the failure of every officer of such a corporation to comply with the requirements of said section, and § 12 of said c. 181 requires annual returns by every foreign corporation to the office of the Secretary of the Commonwealth, with an exception not here material, showing the amount of its authorized capital stock and its assets and liabilities. Section 6 of said c. 181 provides in substance, so far as material, that the commissioner of corporations "shall refuse to accept or file the charter, financial statement or other papers of, or accept appointment as attorney for service for, any such corporation which does a business in this commonwealth the transaction of which by domestic corporations is not then permitted by the laws of this commonwealth, or which has the same name as that of another corporation established under the laws of the commonwealth or of another corporation or of a firm, association or person carrying on business

in the commonwealth, or a name so similar thereto as to be likely to be mistaken for it, unless such other corporation or such firm, association or person shall have previously filed with the commissioner . . . written consent to the use of such name." It is not contended that the petitioner comes within the provisions of said § 6. Other provisions of said c. 181 relate to the liability of a foreign corporation having property in this Commonwealth to be sued, the liability of officers and stockholders for its debts and contracts, and penalties for the neglect to file the certificate of condition required by said § 12.

The language of said § 1, defining a foreign corporation, taken literally, is broad enough to include the petitioner. The natural import of the language used leads to this conclusion, and the meaning does not have to be "stretched by enlargement of signification" to reach this result. It is not contended that the petitioner is not engaged in a lawful business or that it is doing a business in this Commonwealth, the transaction of which by domestic corporations is not permitted by our laws.

The respondent contends, however, that an examination of prior legislation requires the conclusion that it was not the intention of the Legislature to extend the application of said c. 181 to foreign corporations such as the petitioner. Prior to the enactment of the Revised Laws on November 21, 1901, various laws had been enacted requiring the appointment of attorneys by foreign corporations engaged in the insurance, express, mining, quarrying and oil businesses, construction work and by those dealing in bonds and mortgages. By St. 1884, c. 330, apparently for the first time, it was provided in substance that every foreign corporation, except insurance companies, having a usual place of business in this Commonwealth should appoint the commissioner of corporations to be its attorney for the service of all lawful processes, and that before transacting business in this Commonwealth it should file a copy of its charter and a statement of the amount of its capital stock, and details of the payment of the same. R. L. c. 126, entitled "Of Foreign Corporations," provides in

§ 1 that "The term foreign corporation as used in this chapter shall mean a corporation, association or organization which has been established, organized or chartered under the laws of another state or of a foreign country." In 1897, in *Edwards* v. *Warren Linoline & Gasoline Works*, 168 Mass. 564,* it was held that a partnership association formed under the laws of Pennsylvania was not a corporation and could not be sued here as such. St. 1884, c. 330, hereinbefore referred to, was quoted in part as an instance of legislation where the distinction between a corporation proper and a mere association or organization was shown to have been clearly in the mind of the Legislature. In 1894, the Attorney General gave as his opinion to the commissioner of corporations, relative to his duty as to accepting the appointment of attorneys for foreign corporations under the provisions of St. 1884, c. 330, that under St. 1894, c. 381, it was his duty to refuse to accept appointment as attorney for a corporation doing "business in this Commonwealth, the transaction of which by domestic corporations is not then permitted by the laws of the Commonwealth." 1 Op. Atty. Gen. 181. The relevant provisions of said St. 1894 were substantially reënacted in § 2 of said c. 126. The various acts that had been passed prior to the enactment of the Revised Laws, to which general reference has been made, were substantially reënacted in said c. 126, and § 6 contained, among other things, a provision for filing "a statement of the amount of its [the foreign corporation's, except an insurance company's] capital stock, of the amount paid in thereon to its treasurer and, if any part of such payment has been made otherwise than in money, of the details of such payment." R. L. c. 110, entitled "Of Manufacturing and Other Corporations," contained, among other things, a provision for incorporation for the purpose of "carrying on any mechanical or manufacturing business, except that of distilling or manufacturing intoxicating liquors" (§ 5), "of printing and publishing newspapers, periodicals, books or engravings, of carrying on any agricultural, horticultural or quarrying business, or of cutting, storing and selling

ice" (§ 6), and also for the purpose of co-operative trade "with a capital of not less than" $1,000 nor more than $100,000 (§ 7). There are further provisions that such a co-operative "corporation" shall distribute its profits or earnings "among its workmen, purchasers and stock-holders" (§ 69); that no person shall hold shares in any "co-operative association" to an amount exceeding $1,000 at their par value, nor shall any stockholder be entitled to more than one vote upon any subject (§ 70).

On June 5, 1903, the Attorney General gave his opinion to the commissioner of corporations on the question whether certain foreign corporations, operating steamship lines between Boston and ports in other States and countries which did no transportation business from point to point within the Commonwealth or any local business, except such as is strictly incidental to their foreign business, were subject to R. L. c. 126, §§ 4, 6, relative to the appointment of the commissioner as their attorney for the service upon them of legal processes and to the filing in his office of certain sworn statements concerning their capital stock. It was pointed out in the opinion that the sole business of the companies in question was interstate and foreign commerce, the power to regulate which was vested exclusively in Congress, and that it was beyond the power of the State to make the requirements provided for by the statute in question. The case of *Crutcher* v. *Kentucky*, 141 U. S. 47, was cited and its opinion was quoted in part. Finally, it was said that it was to be presumed that the Legislature of Massachusetts, when it enacted the provisions of R. L. c. 126, §§ 4–6, knowing that it had no power to impose conditions upon foreign commerce, did not intend, in its use of the phrase "doing business in this commonwealth," to include the business of transporting passengers and freight between the port of Boston and other States and countries, and that the provisions in question of the statute had no application to the companies in question. 2 Op. Atty. Gen. 440.

St. 1903, c. 437, "An Act relative to business corporations," took effect on August 1, 1903. It is known and

cited authoritatively as "The Business Corporation Law" (see § 1) and, except as therein otherwise provided, it applied to all corporations having a capital stock and established for the purpose of carrying on business for profit theretofore or thereafter organized under general laws of the Commonwealth, and to certain corporations theretofore organized under special laws. It was regarded as a law liberalizing the formation of corporations in this Commonwealth and the methods under which they could do business. The first fifty-five sections are devoted to matters relative to the incorporation and operation of business corporations, including their dissolution. Sections 56 to 70, inclusive, are entitled "Foreign Corporations." By § 56, "The term 'foreign corporation' as used in this act shall mean every corporation, association or organization which has been established, organized or chartered under laws other than those of the commonwealth for purposes for which domestic corporations may be organized under the provisions of section seven." Said § 7 provides that "Three or more persons may associate themselves by a written agreement of association with the intention of forming a corporation under general laws for any lawful purpose which is not excluded by the provisions of section one except to buy and sell real estate or to distil or manufacture intoxicating liquors." The purposes excluded under said § 1 are those relating to banking, railroad and street railway, insurance, telegraph and telephone, gas and electric light, heat, power, canals, aqueducts or water, cemetery or crematory, "or to any other corporations which now have or may hereafter have the right to take or condemn land or to exercise franchises in public ways granted by the commonwealth or by any county, city or town." It is to be observed that the definition of the term "foreign corporation" contained in said § 56 depends (1) upon the purposes for which domestic corporations may be organized, and not the manner in which they may be organized; (2) upon the condition that it must be a corporation that could have been organized under the provisions of § 7, hereinbefore referred to; and (3) upon its not being

a corporation excluded by the provisions of said § 1.  It is true that said § 1 provides that the act "except as herein otherwise provided" applied "(a) To all corporations having a capital stock and established for the purpose of carrying on business for profit."  But this clause relates only to our domestic corporations.  Other sections appearing under the subtitle "Foreign Corporations" in said c. 437 provide for the appointment of an attorney by "such" a corporation for the filing of documents relative to corporate existence and the payment of certain fees, most of which provisions are found in R. L. c. 126.  The provisions of R. L. c. 110, §§ 69 and 70 relative to co-operative associations, hereinbefore referred to, were incorporated in § 93 of said c. 437, and R. L. c. 110 was expressly repealed, together with said c. 126 except § 8, "so far as . . . [it applies] to corporations which are subject to the provisions of this act."

St. 1919, c. 333, § 16, passed to take effect on February 1, 1921, provided that §§ 57 to 65, inclusive, and § 91 of c. 437 of the acts of 1903, and all acts in amendment of or in addition thereto were thereby extended and made applicable to all foreign corporations, except insurance companies, "so far as they apply," and c. 126 of the Revised Laws, except §§ 2, 7, 8, 9, 17, 18, and 19 was repealed.  The commissioners appointed to consolidate and arrange the general laws of the Commonwealth, in their report (House Bill 1270 of 1919) said, in connection with said § 16: "R. L. 126 has been in a large part superseded by 1903, 437, §§ 56 to 70 and § 91; but the latter act applies only to business corporations, while R. L. 126 applied to all foreign corporations doing business in the Commonwealth.  §§ 57 to 69 of 1903, 437, also § 91, can be made to apply to all kinds of foreign corporations except insurance companies, and we therefore recommend their extension to all such corporations and the repeal of so much of R. L. 126 as is not particularly applicable to insurance companies or other special classes of corporations.  The sections of R. L. 126 which are not repealed are retained for the following reasons: — § 2 contains an exception relating to life insurance

companies. § 7 applies to insurance companies. § 8 applies to foreign banks, of which there is one in the Commonwealth, and certain other foreign corporations of kindred nature. § 9 applies to all foreign corporations, including insurance companies. 1903, 437, § 62, which is in substance identical with R. L. 126, § 9, is not hereby made applicable to insurance companies, and it is therefore necessary to retain § 9 in order that insurance companies may be subject to the same provisions as other corporations in respect to the subject-matter of the two sections. §§ 17, 18, 19 relate to the liability of officers and stockholders. §§ 17 and 19 must be conserved because they include insurance companies, and § 18 for the further reason that it imposes a greater liability than does 1903, 437, § 70, which liability it is deemed advisable to retain as to corporations other than business corporations."

In the meantime, St. 1917, c. 224, was passed providing that agricultural or horticultural organizations, instituted for the purposes of mutual help, may incorporate in the manner provided in c. 437 of the acts of 1903 and amendments thereof "and shall be subject to the provisions of said chapter and amendments thereof: provided, however, that if such a corporation is formed for the purpose of doing business at cost for the benefit of its members, it shall not be required to have a capital stock." When the General Laws were enacted to take effect January 1, 1921, the provisions relating to foreign corporations that had appeared in St. 1903, c. 437, and acts in amendment thereof and addition thereto, were not incorporated in c. 156, entitled "Business Corporations" but were placed in c. 181, entitled "Foreign Corporations." The relevant provisions of said c. 181 have already been referred to. Chapter 157 of the General Laws is entitled "Co-operative Corporations" and provides that a corporation may be organized under c. 155, which contains general provisions relative to corporations, and c. 156, the business corporation chapter, with shares having par value, for the purpose of co-operation in carrying on any business, and of co-operative trade. Said c. 156, § 2, when enacted, contained a provision that

the chapter should apply to agricultural or horticultural organizations instituted for purposes of mutual help, which, if formed for the purposes of doing business at cost for the benefit of their members, shall not be required to have capital stock. (See St. 1917, c. 224.) St. 1923, c. 438, entitled "An Act to provide for the incorporation of agricultural and other co-operative organizations without capital stock" struck out that part of § 2 of c. 156, just before referred to. It added by way of amendment to said c. 157 provision for the incorporation without capital stock of agricultural and horticultural associations engaged in any branch of agriculture, horticulture, forestry, dairying, the raising of livestock or poultry, and any other farming activity or business, if instituted for the mutual benefit of their members and formed for the purpose of doing business without profit to the association itself. St. 1921, c. 486, "An Act making certain corrections in the general laws," by its § 31 provided an amendment of § 1 of said c. 181 in the definition of the words "Foreign corporation" which appear in G. L. (Ter. Ed.) c. 181, § 1. There has been no amendment of this section since 1921.

From this review, the intent of the Legislature is manifest, commencing in 1852, and repeated in cumulative form ever since, to require, first, insurance companies (see St. 1852, c. 311), and, finally, every foreign corporation with exceptions, in our opinion not here material, to appoint some citizen of this Commonwealth, or one of its officials, its attorney for the purpose of accepting service of all lawful processes; and also to require such foreign corporations to file documents relative to corporate existence. In the case of *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank*, 196 Mass. 458, the provision of St. 1903, c. 437, § 60, that "no action shall be maintained or recovery had in any of the courts of this commonwealth by any such foreign corporation so long as it fails to comply with the requirements of said sections" 58, 60, and 66 of that chapter, was considered. (See now G. L. [Ter. Ed.] c. 181, § 5.) It was said by Rugg, J., at page 461, that "its aim is . . . to bring foreign corporations under the

supervision and regulation of State officials, and to give to the public the same information respecting their financial standing, their character and management which is required of domestic corporations, and also to render them amenable to ordinary legal process." It hardly can be said that a corporation organized for the purposes of the petitioner is not engaged in business. Corporations organized for co-operative purposes are not uncommon. They are authorized and recognized by our laws.

The respondent contends that the definition of a "Foreign corporation," if taken literally so as to exclude only insurance companies and corporations organized under c. 180, would require corporations to register that are engaged exclusively in interstate commerce. The question before us is whether the statute involved applies to this petitioner and there is no suggestion that it is engaged exclusively in interstate commerce. This contention, adduced by way of argument only, need not be passed upon. See, however, *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239; *Garvey* v. *Wesson*, 258 Mass. 48; *Sullivan* v. *Canadian Pacific Railway*, 22 Fed. Sup. 95.

In *Connecticut Valley Tobacco Association, Inc.* v. *Agawam*, 261 Mass. 110, the plaintiff was not an agricultural corporation, but was organized for mutual help in warehousing and marketing tobacco, and it had no capital stock. It was said at page 111: "The corporation under G. L. c. 181 was properly registered as a foreign corporation doing business in Massachusetts . . . ." Although this quoted statement was not required by the facts of the case, it being a suit to recover a tax alleged to have been void and illegal and paid under protest, nevertheless it demonstrates the fact that a co-operative association without capital stock had been either permitted or required to comply with the provisions of said c. 181, and in this connection it is to be noted that St. 1923, c. 438, which permitted the incorporation without capital stock of agricultural and horticultural associations was not approved until May 23, 1923, and also that the tax assessed in the case just cited was on tobacco stored within the defendant town on April 1, 1923.

The respondent contends that, if it had been the legislative intent to include corporations such as the petitioner within the scope of said c. 181, it would have been natural for the Legislature to have inserted the words "if any," after the words "the amount of its capital stock" in § 5. We do not think this follows. The words "the amount of its capital stock" in said section are immediately qualified by the words "authorized and issued." To accept this contention would be in effect to require the court to read into the definition of "Foreign corporation" in § 1 of said c. 181, the words "having a capital stock." We are of opinion that the legislative history culminating in the definition of "Foreign corporation" as appearing in § 1 of said c. 181, does not require or permit this. That definition gradually but steadily evolved since 1852 is comprehensive enough to include the petitioner notwithstanding the provisions of § 5 as to "the amount of its capital stock, authorized and issued." When the business corporation law was enacted by St. 1903, c. 437, the manifest purpose of the Legislature in defining the term "Foreign corporation" as used in that act was to include every corporation, association or organization established, organized or chartered under laws other than those of the Commonwealth for purposes for which domestic corporations could be organized under that act. The important consideration was the purpose for which such foreign corporation, association or organization was established, organized or chartered and not the precise form or manner in which it had been so established. Such an intent is in harmony with the rule as to comity of States which extends to corporations the privilege of exercising the powers conferred by their charters beyond the limits of the State or country in which they had their origin and legitimate existence. See *Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580; *Saltmarsh* v. *Spaulding,* 147 Mass. 224. This rule of comity, however, is subject to the restriction that in giving effect to foreign statutes the State is careful to see that no wrong or injury is thereby done to its citizens, and that the policy of its own law is in no way contravened or im-

paired. *Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580. The legislative policy as developed has been to bring foreign corporations under some measure of supervision and proper regulation, and to deny them certain rights if they failed to comply. *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank*, 196 Mass. 458.

*Exceptions sustained.*
*Peremptory writ to issue.*