Lauriat, J.
Ralph and Cathy Oats (“the Oatses”), Texas residents, brought this action to enforce a judgment for damages issued by a Texas court against the Massachusetts defendants, John H. Whittaker (“Whit-taker”) and Canine Industries, Inc., d/b/a Canine Protection Services (“Canine Industries”), after the Texas court entered a default judgment against them in Texas. The Oatses have now moved for summary judgment on the grounds that the Texas court had personal and subject matter jurisdiction over the defendants, and thus that court’s judgment is enforceable in Massachusetts under the Full Faith and Credit Clause of the United States Constitution, U.S.C.A. Const. Art. IV § 1. For the reasons discussed below, the plaintiffs’ summary judgment motion is allowed.

BACKGROUND

The following facts, viewed in the light most favorable to the defendants, are undisputed. Canine Industries is a Massachusetts company in the business of selling protection dogs. John Whittaker is the president and owner of Canine Industries. The Oatses are residents of North Dallas, Texas. In April 2002, the Oatses visited the Website of Canine Industries, www.protectiondogs.com, and contacted Whittaker about purchasing a dog for their residence. After numerous communications, the parties came to an agreement for the sale of a dog to the Oatses. The parties did not sign a written agreement regarding the sale. In August 2002, Whittaker and an assistant from Canine Industries delivered Brix, a dog, to the Oatses in Texas. They remained in Texas for a few days with Brix. During this time, it was concluded that Brix was not the proper dog for the Oatses and Brix was removed from the Oatses’ residence.
After further communications, the parties came to an agreement for the sale of two dogs to the Oatses, Osha and Pirol. Again, the parties did not enter into a written agreement regarding the sale. In Januaiy 2003, Whittaker flew to Texas to deliver the two new dogs. After approximately ten weeks, the Oatses experienced problems with one of the dogs. After the Oatses notified Whittaker, Whittaker flew to Texas to retrieve both dogs. The Oatses requested their money back: $52,500 for the dogs, and $6,585 in travel expenses. This included the initial deposit of $8,000 made to Canine Industries and the balance of payment, expenses of airfare, hotel and car rental which were made by a check written out to Whittaker on behalf of Canine Industries and cashed by Whittaker at a local Texas bank. Canine Services did not return the Oatses’ payments.
The Oatses thereupon filed suit in Dallas County Court at Law, Dallas County, Texas, alleging fraud, breach of contract, misrepresentation, and violations of the Texas consumer protection act. Whittaker and Canine Industries were served via mail to the last known address of the defendants’ place of business, under the Texas long-arm statute. Tex.P.&Rem.Code §17.043. On December 19, 2003, the Oatses filed the return of service with the Dallas County Court. The defendants failed to appear or answer within the time allowed. The Oatses then requested that a default judgment to be issued. The Texas court found that it had both personal and subject matter jurisdiction, and issued a default judgment for $59,085 in actual damages; $213.80 in attorneys fees; $10,000 in exemplaiy damages; $10,000 in additional damages; costs of court; and pre- and post-judgment interest.
To enforce the Texas judgment, the Oatses filed this action on July 2, 2004, in the Middlesex Superior Court pursuant to G.L.c. 235, §23A, as a complaint and petition for registration of foreign judgment. The court (Neel, J.) denied the plaintiffs’ request for judgment, concluding that G.L.c. 235, §23A does not apply to judgments rendered in courts of sister states, such as Texas.
The Oatses then filed an amended complaint seeking a judgment on their Texas judgment pursuant to the Full Faith and Credit Clause, Article IV, Section 1, of the United States Constitution. A second request for judgment was filed and denied until the defendants were given notice of this action. After the defendants were served, the court held a hearing on the Oatses’ motion for reconsideration and their request for judgment. The court denied the Oatses’ motions, and *638 ordered the filing of motions for summary judgment on the issue of whether the Texas court had jurisdiction.

DISCUSSION

Summary judgment will be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 710 (1991).
Since the defendants did not appear in the Texas action, they are restricted here to litigating the single issue of whether the Texas court had proper jurisdiction over them, thus making the Texas judgment enforceable in Massachusetts under the Full Faith and Credit Clause.[1] Shapiro Equip. Corp. v. Morris & Son Constr. Corp., 369 Mass. 968 (1976).
I.The Full Faith and Credit Clause
The enforcement of sister state judgments in this Commonwealth is not a function of a state statute, but is instead subject to federal constitutional and statutory mandate. Pursuant to both the Full Faith and Credit Clause of Article IV, §1 of the United States Constitution[2] and Section 1738 of Title 28 of the United States Code,[3] Massachusetts is obligated to recognize and enforce the final judgment of another state absent certain defenses, such as jurisdiction, which affect the validity of that judgment. Wright Mach. Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688-89 (1974); Andreson v. Andreson, 29 Mass.App.Ct. 476, 479 (1990). Exceptions to the Full Faith and Credit Clause are rare and narrowly drawn; and the final authority of such exceptions is the United States Supreme Court. Titus v. Wallick, 306 U.S. 282, 291 (1939).
The procedure for obtaining an execution on a foreign judgment under Mass.R.Civ.P. 69 requires that the holder of the foreign judgment first obtain a Massachusetts judgment recognizing the foreign judgment. Rule 69 states that “(p)rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings on and in aid of execution shall be in accordance with applicable statutes.” The applicable statute is G.L.c. 235, §14, which provides that to execute on a foreign judgment in Massachusetts, the plaintiff must have a Massachusetts judgment. Smith Barney, Harris Upham & Co. v. Connolly, 887 F.Sup. 337 (D.Mass. 1994).
The court (Neel, J.) concluded that the Texas court’s judgment does not constitute a foreign judgment within the meaning of G.L.c. 235, §23A. The Oatses now assert that recognition of the Texas court’s judgment by this Massachusetts court may be made pursuant to the Full Faith and Credit Clause of the United States Constitution. See Shapiro, 369 Mass. at 968; Town of Harrison v. Aldenberg, 1997 Mass.App.Div. 37 (1997). The Oatses also contend that Massachusetts must give full faith and credit to the judgment of the Texas court because the Texas court had personal and subject matter jurisdiction, and that accordingly, this court should order an execution on the Texas judgment.
The defendants have not addressed the constitutional law of full faith and credit, or provided any citation to relevant authority as to the scope of, and exceptions to, this doctrine. Instead, they rely on Titan PRT Systems, Inc., et al v. Fabian, 6 Mass.L.Rptr. 345 (1997), a case interpreting the enforcement of a foreign judgment under G.L.c. 235, §23A, not the Full Faith and Credit Clause of the United States Constitution.
In order for the Texas court’s judgment to be recognized and enforced by this court pursuant to the Full Faith and Credit Clause, the plaintiffs must first establish that the Texas court properly exercised personal jurisdiction over the defendants under the Texas long-arm statute, and that doing so did not offend the defendants’ due process rights under the Fourteenth Amendment.
II.The Texas Longarm Statute
The Texas “longarm” statute authorizes the exercise of jurisdiction over all parties who do business in Texas. Tex.P.&Rem.Code §17.042. Texas courts have held that “the broad language of the ‘long-arm’ statute’s doing business requirement allows the statute to reach as far as the federal constitution permits.” Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). While the statute lists several specific acts that constitute “doing business” in Texas, it also states that the statute includes any “other acts that may constitute doing business.” M.[4] The “doing business” requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). Therefore, this court need only consider whether the assertion of personal jurisdiction over the defendants is consistent with the requirements of due process.
III.Due Process
A.
The Supreme Court has held that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment when two requirements are met: (1) the *639 defendant has established “minimum contacts” with the forum state; and (2) maintenance of the suit in the forum state does not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Due Process Clause protects an individual’s liberty interest in not being subject to the judgments of a foreign forum with which no meaningful “contacts, ties or relations” have been established. Id. This test also ensures that individuals have fair warning that a particular activity may make them subject to jurisdiction of a foreign sovereign. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
The minimum-contacts analysis requires that the nonresident defendants “purposefully avail” themselves of the privilege of conducting business within Texas, thus invoking the benefits and protections of Texas’s laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The defendants’ activities must justify a conclusion that the defendants could reasonably anticipate being hailed into a Texas court. World-Wide Volkswagen, 444 U.S. at 297. Contacts that are random, fortuitous, or attenuated do not subject nonresident defendants to jurisdiction. Guardian, 815 S.W.2d at 226. In order for a Texas court to exercise jurisdiction over the nonresident defendants, the defendants’ contacts with Texas must be purposeful and the cause of action must arise from or relate to those contacts. Id. at 227.
The summary judgment record shows that the defendants’ established minimum contacts with Texas, and that the Oatses lawsuit arose out of those same contacts. The Oatses brought suit against the defendants on a contract for the sale of dogs, which was performed by the defendants in Texas. On three different occasions, Whittaker and other Canine Industries employees traveled to Texas regarding the sale of dogs to the Oatses. Of these three occasions, two were for the purposes of delivering dogs to the Oatses and one was to retrieve the dogs from the Oatses. The defendants conducted business in Texas at least to the extent that they delivered goods in Texas to individuals residing in Texas.
While in Texas, Whittaker cashed a check from the Oatses, which was given to him on behalf of Canine Industries. This check was given to Whittaker as a result of the defendants’ business with the Oatses, and was deposited by Whittaker into the banking system of Texas.
Further, the defendants, via their website, made their services available around the country, including in Texas. When the defendants Communicated with the Oatses, they knew that the Oatses resided in Texas. Therefore, the defendants purposefully communicated with Texas residents and purposefully did business within Texas related to those contacts.
Whittaker and Canine Industries willingly undertook their business obligations in Texas. They invoked the benefits and protections of Texas by advertising to Texas residents on the internet, conducting business with Texas residents, traveling to Texas to deliver goods, and using Texas’ banking system. Therefore, it is reasonable to conclude that the defendants could anticipate being summoned into a Texas court in connection with their contacts with Texas.
B.
In order for Texas to have jurisdiction over the defendants, it is also required that the maintenance of the suit in Texas not offend traditional notions of fair play and substantial justice. The factors used to make this determination include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. Guardian, 815 S.W.2d at 228, citing World-Wide Volkswagen, 444 U.S. at 292. “Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.” Guardian, 815 S.W.2d at 231, citing Burger King, 471 U.S. at 477-78. The defendant must present a “compelling case that the presence of some consideration would render jurisdiction unreasonable.” Id Distance, alone, is not ordinarily sufficient to defeat jurisdiction. Id.
After an analysis of the facts, the court concludes that the Texas court’s assertion of jurisdiction over the defendants did not violate traditional notions of fair play and substantial justice. The defendants traveled to Texas on three different occasions for the purpose of selling dogs and maintaining a business relationship with the Oatses. Therefore, the burden on the defendants to travel to Texas to defend a lawsuit would not be a substantial one. Also, Texas has a substantial interest in adjudicating this suit because it has an interest in protecting its citizens from the contractual breaches and fraudulent business practices of nonresidents. Here, Texas has an interest in providing recourse to its citizens, the Oatses, when the goods were delivered to Texas and the contract was allegedly breached in Texas.
As residents of Texas, the Oatses have an interest in obtaining convenient and effective relief in a forum of their choice, the Dallas County Court of Law. The interest of the interstate judicial system in obtaining the most efficient resolution of the controversy lies with Texas because most of the contract was performed in Texas and the alleged injured parties reside in Texas. In furtherance of the shared interests of the several States in fundamental substantive social pol *640 icies, Texas is the proper jurisdiction for this suit because it is the jurisdiction where the contract was to be performed and where the contract was alleged breached.
The defendants have not met their burden of showing specific facts that would raise the issue of lack of personal jurisdiction. See Shapiro, 369 Mass. 968. They have not asserted facts suggesting inadequate notice of service of the lawsuit or lack of personal jurisdiction. See New Jersey State Firstman’s Mut. Benevolent Ass’n v. Telco Communications, Inc., 1999 Mass.App.Div. 229. The defendants rely on Helicopteros Nationales De Colombia, S.A. v. Hall et al., 466 U.S. 408 (1984), and contend that they had insufficient minimum contacts such that the Texas court could exercise personal jurisdiction over them. However, this reliance is misplaced. The Helicópteros decision only established the necessary forum contacts for general jurisdiction over a nonresident when the cause of action does not arise from or relate to the nonresident defendant’s purposeful conduct within the forum state, but there are continuous and systematic contacts between the nonresident defendant and the forum state. Id. at 414-16.
The Oatses have satisñed their burden, as the moving party, of establishing as a matter of law that the Texas court properly acquired or exercised personal jurisdiction over the defendants. International Shoe, 326 U.S. at 320. Accordingly, the plaintiffs have demonstrated that no genuine issue of material fact exists and that they are entitled to judgment as matter of law.
IV. Penal Judgments
The Texas court awarded the Oatses $59,085 in actual damages; $213.80 for attorney fees; $10,000 exemplary damages for their fraud claim; and $10,000 additional damages for their Deceptive Trade Practice-Consumer Protection Act claim. There is an exception to the Full Faith and Credit Clause for penal judgments. Generally, there is no constitutional requirement for the enforcement of a sister state’s judgment for a penalty. Sun Oil Co. v. Wortman, 486 U.S. 717, 723 (1988); Testa v. Katt, 330 U.S. 386, 392 (1947); Schaffer v. Leimberg, 318 Mass. 396, 399 (1945); Parks Shellac Co. v. Harris, 237 Mass. 312, 320 (1921).
In Milwaukee County v. White Co., 296 U.S. 268 (1935), the United States Supreme Court left open the issue of whether a statute was required to give full faith and credit to a judgment for an obligation created by a penal law. Id. at 270. See Williams v. North Carolina, 317 U.S. 287, 295 (1942); Philadelphia v. Austin, 429 A.2d 568, 570 (N.J. 1981). Accordingly, the Full Faith and Credit Clause does not require Massachusetts to recognize the Texas penal judgment. Instead, it leaves open the possibility of Massachusetts voluntarily electing to recognize that judgment. “Principles of comity permit the voluntary recognition and enforcement of the judicial proceedings of a sister state, provided that a state’s own citizens are not unfairly prejudiced thereby and a state’s public policies are not impaired.” Harrison, 1997 Mass.App.Div. 37, citing Delk v. Gonzalez, 421 Mass. 525, 530 (1995); Pacific Wool Growers v. Commissioner of Corp. & Tax., 305 Mass. 197, 209 (1940).
Neither party has advanced any argument that Texas’s fraud and deceptive trade laws, its enforcement of the same, or its provision for attorneys fees, in any way contravene or are inconsistent with any statute or policy of Massachusetts. Furthermore, Texas’s Deceptive Trade Practice-Consumer Protection Act is analogous to Massachusetts’ consumer protection law, G.L.c. 93A. The provisions of G.L.c. 93A, §§9 and 11, allowing for double or treble damages, are punitive in nature. See Kapp v. Arbella Mut Ins. Co., 426 Mass. 683, 686 (1998), quoting Yeagle v. Aetna Cas. & Sur. Co., 42 Mass.App.Ct. 650, 655-56 (1997). The statute provides that acts or practices that are knowing, willful, or made in bad faith are sanctioned more heavily and are “avowedly punitive.” Id. Therefore, the additional damages awarded by the Texas court on the Oatses’ consumer protection claim constitute an award that is enforceable at this court’s discretion.
Under the circumstances of this case, the court concludes that the Texas court’s awards of exemplary and consumer-protection act damages are enforceable by this court under the Full Faith and Credit Clause of the United States Constitution.

ORDER

For the foregoing reasons, the Motion of the Plaintiffs for Summary Judgment is ALLOWED.

As stated in the defendants’ memorandum of law in opposition to plaintiffs’ motion for summary judgment at footnote 1, “the defendants have not contested the Texas court’s subject matter jurisdiction, rather; they assert that Texas had no in personam jurisdiction.”

“Full Faith and Credit shall be given in each state to the public acts, records and judicial proceedings of every other state.”

“Judicial proceedings . . . shall have the same full faith and credit in every court within the United States ... as they have by law and usage in the courts of such state . . . from which they are taken.”

The Texas longarm statute reads, in relevant part:
In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state . . .