ALMA H. CONLON vs. HENRY A. SAWIN.

No. 93-P-721.

Norfolk. April 12, 1994. - October 25, 1994.

Present: FINE, JACOBS, & GREENBERG, JJ.

Further appellate review granted, 419 Mass. 1105 (1995).

*Statute*, Construction. *Laches. Paternity.*

This court concluded that the scope of G. L. c. 209C does not encompass an action to establish paternity brought by an emancipated adult who had been born out of wedlock [546-548]; the appropriate proceeding would be an action under G. L. c. 190, § 7, as amended by St. 1980, c. 396, § 7, for purposes of asserting inheritance rights [549].

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on June 15, 1990.

The case was heard by *James M. Sweeney*, J., on a motion to dismiss.

*Paul L. Carlucci* for the plaintiff.
*Carol Lynn May* for the defendant.

GREENBERG, J. If all had gone according to plan, Etta Riel would have prosecuted her "begetting" complaint in the District Court against the defendant, the man she alleged was the father of her infant daughter.[1] On the eve of the date set for trial, November 22, 1934, she mysteriously vanished. Her sudden disappearance sparked an extensive police investigation, including questioning of the defendant, the last person known to have seen her alive. Articles in mystery magazines provoked national speculation; offers of rewards yielded no concrete leads. In spite of all the interest, no one ever deter-

---

[1]Prior to its repeal by St. 1977, c. 848, § 7, G. L. c. 273, § 11, made criminal the act of begetting a child by a man "not being the husband of the [mother]." Under G. L. c. 273, § 12, as amended by St. 1913, c. 563, §§ 2 & 9, district courts were empowered to adjudicate paternity.

mined what happened. Etta Riel was never seen or heard from again.

Nearly sixty years later, her daughter renewed the issue of paternity by filing an action against the defendant, in the Probate and Family Court, this time under G. L. c. 209C.[2] After a hearing, a judge dismissed the action with prejudice, and the plaintiff has appealed from the judgment. We affirm.

The judge read the statute as a prophylactic measure designed to protect minor children born out of wedlock and to provide them with some means of support and not primarily as an apparatus for a declaration of paternity. He found the lengthy prorogation of proceedings prejudiced the defendant because witnesses were in all likelihood unavailable. The judge factored into the equation the defendant's precarious health and the general uncertainty of defending a case concerning events that had receded over the years. In the end, he ruled that no sound policy reason would permit the plaintiff's action to proceed.

For their part, the parties focus their debate on the meaning of the word "child" as it appears in § 1 of the statute. The plaintiff holds that the Legislature intended "child" to mean "son or daughter of any age." As support, she cites the absence of a statute of limitations for actions brought under G. L. c. 209C. The plaintiff also contends that the precatory language of the statute is clear and unambiguous, declaiming "the purpose of this chapter [is] . . . for such children . . . to have an adjudication of their paternity," and that, according to *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984), the "statutory language is the principal source of insight into Legislative purpose." The defendant, on the other

---

[2]Section 25 of Chapter 310 of the Acts of 1986 repealed the exclusive jurisdiction of the District Courts over criminal nonsupport complaints formerly conferred by G. L. c. 273, § 12. Under G. L. c. 209C, § 3(a), inserted by St. 1986, c. 310, § 16, the District, Boston Municipal and Probate and Family Court Departments were given concurrent civil jurisdiction over complaints to establish paternity or support.

hand, argues that the ordinary dictionary definition of the word child means being under legal age.[3]

Section 1 of c. 209C, inserted by St. 1986, c. 310, § 16, provides in relevant part: "It is the purpose of this chapter to establish a means for . . . children either to be acknowledged by their parents voluntarily or, *on complaint by one or the other of their parents or by such other person or agency as is authorized to file a complaint* . . . to have an adjudication of their paternity, to have an order for their support and to have a declaration relative to their custody or visitation rights ordered by a court of competent jurisdiction" (emphasis added).

Where the literal text of a statute is plain and does not lead to an absurd result, we need not divine legislative intent. See *Salem Hosp.* v. *Rate Setting Commn.*, 26 Mass. App. Ct. 323, 324 (1988). Contrast *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979). The clarity of the quoted portion of § 1 is, however, cast in doubt by the immediately following § 2 which reads:

> "Paternity may be established by the registration of an acknowledgment of parentage executed by both parents and filed with the court pursuant to section eleven or *pursuant to an action to establish paternity filed pursuant to this chapter.* Actions to establish support obligations or for custody or visitation rights may also be filed pursuant to this chapter" (emphasis added).

From the language of § 2, and its context, it seems to permit a separate action to establish paternity not associated with support obligations or custody. That construction would support the plaintiff's position. "[O]rdinarily the qualification of a later clause upon an earlier one is to be expected." 1A Sutherland, Statutory Construction § 20.7, at 89 (5th ed.

---

[3] "Almost fifty years ago, Judge Learned Hand declared that 'it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary.' " Note, Looking It Up: Dictionaries and Statutory Interpretation, 107 Harv. L.Rev. 1437, 1437 (1994), quoting from *Cabell* v. *Markam*, 148 F.2d 737, 739 (2d Cir. 1945).

1993). But in the instant case, as we have observed, § 1 delineates those persons entitled to bring a complaint on behalf of a child — the parents or a court appointed representative. From the language of c. 209C and its context, it appears that the authority so conferred is exclusive.[4]

Chapter 310 of the Acts of 1986, itself, was entitled "An Act Improving the Collection of Child Support in the Commonwealth." That act made a variety of changes relating to child support guidelines and authorized a host of collection procedures to insure that support orders were enforced. The title to a statute may be considered in its construction. *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 352-353 (1973). *Trustees of Boston Univ.* v. *Assessors of Brookline*, 11 Mass. App. Ct. 325, 329 n.6 (1981). We may conclude from the child support and revenue contexts that the scope of c. 209C does not encompass the paternity claim of an emancipated adult born out of wedlock.

Even if we conclude the Probate Court could decide the issues under its general equity jurisdiction (G. L. c. 215, § 6), see *Doe* v. *Roe*, 23 Mass. App. Ct. 590, 592-593 (1987), and cases cited, the plaintiff's claim would be barred by the defense of laches. See *Stewart* v. *Finkelstone*, 206 Mass. 28, 36 (1910); *Norton* v. *Chioda*, 317 Mass. 446, 452 (1945). The judge's findings indicated that after the passage of so many years, the evidence is "stale" and the defendant physically infirm. Nothing in the record contradicts those findings. See *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 567

---

[4]Our construction of the statute is fortified by Administrative Bulletin No. 4-87, published on May 14, 1987, by the District Court Department concerning St. 1986, c. 310, which states: "209C Complaints may be commenced by the following parties: the mother [see 209C, § 14]; a person presumed to be or alleging himself to the father [citing *P.B.C.* v. *D.H.*, 396 Mass. 68 (1985), 475 U.S. 1058 (1986)]; the child, the child's guardian, next of kin, or other person standing in a parental relation to the child; a parent or personal representative of the mother, if she has died or abandoned the child; the Department of Social Services or other licensed foster care agency having custody of the child; or [the Department of Public Welfare], if the child is or was a recipient of any type of public assistance. Finally G. L. c. 209C, § 21, permits 'any interested party' to file an action to determine the existence of a mother-child relationship."

(1961), and cases cited. In view of these circumstances, we need not consider whether and to what extent the interest of an unemancipated adult born out of wedlock who seeks to establish paternity might be protected under G. L. c. 215, § 6.

We note that the plaintiff is not without remedy. She may seek a declaratory judgment to establish the defendant's paternity for purposes of asserting inheritance rights, a proposition not raised in her appeal. As suggested by the court in *Lowell* v. *Kowalski*, 380 Mass. 663, 670 (1980), the Legislature, by St. 1980, c. 396, § 7, amended G. L. c. 190, § 7, to permit a person to establish paternity by bringing an action "against executors and administrators" of the putative father.

*Judgment affirmed.*