In re Harris GOLDMAN, Debtor.

Harris GOLDMAN, Appellant,

v.

Michael B. FEINMAN, Chapter
7 Trustee, Appellee.

Bankruptcy No. 94–14970–WCH.
Civil Action No. 95–11462–WGY.

United States District Court,
D. Massachusetts.

Jan. 18, 1996.

Charles A. Dale, Hanify & King, P.C., Boston, MA, for Appellant Harris Goldman.

Michael B. Feinman, Trustee, Andover, MA, pro se.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. Background

In July, 1994, Appellant Harris Goldman ("Goldman") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Appellee, Michael Feinman, was appointed Trustee of the estate. In his petition, Goldman claimed full exemption of his interest in an Individual Retirement Account ("IRA") pursuant to 11 U.S.C. § 522(b)(2) (1994) and Mass.Gen.L. ch. 235, § 34A (1994).[1] The state law provides in relevant part:

> The right or interest of any person in an annuity, pension, profit sharing or other retirement plan maintained in accordance with the federal Employee Retirement Income Security Act of 1974, or in any annuity or similar contract purchased with assets *distributed from any of the foregoing,* or in any plan maintained by an individual as a Keough Plan, a Simplified Employee Plan, or an Individual Retirement Account shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person. . . . The exemption in this section for plans maintained by an individual shall not apply to *sums deposited* in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment.

Mass.Gen.L. ch. 235, § 34A (emphasis added).

In October, 1994, the Trustee filed an objection to, *inter alia,* the section 34A claim, arguing that the last sentence of the statute applies to Goldman's IRA, thereby limiting the allowable exemption to seven percent of

Goldman's total income within five years of his declaration of bankruptcy.

Goldman filed a response to the objection, arguing that the Trustee misinterprets the statute. Goldman contends the words "sums deposited" in the last sentence of the statute demonstrates a clear legislative intent to distinguish between, and treat differently, individual IRA's created from funds distributed (or "rolled-over") from Employee Retirement Income Security Act ("ERISA") plans and individual IRA's created from the current income of plan beneficiaries. He concludes that the former type of IRA is not subject to the income-based limitation of the statute's final sentence. According to Goldman, the Legislature intended the limitation to protect creditors against persons who would otherwise "squirrel away" large portions of present earnings in anticipation of a bankruptcy filing. Goldman maintains the Legislature indicated through the phrase "sums deposited" that the cap should not apply to individual IRA's such as his: IRA's which, he claims, are the sole product of funds being distributed, or rolled-over, from an ERISA plan.

Prior to establishing his IRA, Goldman was sole proprietor of the Harris S. Goldman Management Company and a beneficiary of a pension plan (the "Plan") controlled by that company. In 1991, Goldman, acting as administrator, terminated the Plan because the company was no longer able to make the required contributions. For legitimate tax purposes, he directed his interest in the Plan to be used to establish an IRA. Goldman never received a distribution of the funds, and has never deposited any other money into the account. At present, the balance of the IRA is approximately $286,000.

Following a hearing on the matter on November 29, 1994, the Bankruptcy Court for

---

1. Under the Bankruptcy Code, property may be exempted from the estate pursuant to 11 U.S.C. § 522 (1994). Section 522(b)(1) provides for what is commonly referred to as the "bankruptcy exemption" scheme. It permits debtors to exempt property described in section 522(d), including "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any

dependent of the debtor. . . ." 11 U.S.C. § 522(d)(10)(E) (1994).

Alternatively, section 522(b)(2) provides for the "other-law exemption" scheme, which allows a debtor to exempt property protected under either non-bankruptcy federal law or state or local law. *See* Warren Agin, *Protecting Pension Plans and Individual Retirement Accounts in Bankruptcy,* 35 Boston Bar Journal 10, 10–11 (1991). It is the "other-law" scheme through which the section 34A claim of exemption is made.

the District of Massachusetts (Hillman, J.) issued an order sustaining the objection of the Trustee to the claim of full exemption of the IRA. The Bankruptcy Court calculated Goldman's total income for the relevant five year period at $759,217, and determined that the seven percent exemption to which he is entitled is $53,145.19.

Goldman subsequently retained new counsel, and filed a Motion for Reconsideration and Relief from the Order. Following a hearing in February, 1995, Judge Hillman agreed to reconsider the merits of the claim of full exemption and took the matter under advisement. On May 16, 1995, the Bankruptcy Court issued a decision denying the Motion, explaining its statutory interpretation, and ruling that a debtor may not claim full exemption under section 34A for an IRA, including one created from rolled-over assets. *In re Goldman,* 182 B.R. 622 (Bankr.D.Mass. 1995). Goldman now appeals from that decision.

This appeal can best be addressed by considering the arguments framed by the Trustee. The Trustee argues first that the issue of interpretation is now moot, as Goldman has amended his petition and no longer claims the section 34A exemption. Goldman's current claimed exemption is made under the "bankruptcy exemption" scheme, *see supra* note 1, pursuant to 11 U.S.C. §§ 522(b)(1) and 522(d)(10)(E). The Trustee also stresses that the legislative history of section 34A, as indicated by a series of amendments, supports his interpretation and mandates a decision by this Court affirming Judge Hillman's ruling. Finally, the Trustee contends that Goldman's IRA was in fact not the product of funds being rolled over from an ERISA plan.

## II. Discussion

### A. Mootness

The Trustee argues as a threshold matter that the issue on appeal is moot. He correctly points out that Goldman amended his claim of exemption, switching to that available under 11 U.S.C. §§ 522(b)(1) and

522(d)(10)(E).[2] He argues that because section 522 does not allow for the maintenance of two exemption schemes simultaneously, Goldman no longer claims an exemption pursuant to section 34A. He reasons therefore that the issue before the Court is moot as there is no longer an actual "case or controversy" within the meaning of Article III of the Constitution; thus the case is no longer justiciable. *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 132–33, 40 L.Ed. 293 (1895); *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.,* 48 F.3d 618, 620 (1st Cir.1995); *Oakville Dev. Corp. v. Federal Deposit Ins. Corp.,* 986 F.2d 611, 613 (1st Cir.1993).

"Mootness in bankruptcy appellate proceedings ... is premised on jurisdictional and equitable considerations stemming from the impracticality of fashioning fair and effective judicial relief." *In re Public Serv. Co. of New Hampshire,* 963 F.2d 469, 471 (1st Cir.), *cert. denied sub nom. Rochman v. Northeast Utils. Serv. Co.,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). Mootness occurs where the appellate court can offer no effective remedy. *Id.* at 471 n. 4 (citing *Mills,* 159 U.S. at 653, 16 S.Ct. at 132–33).

Goldman correctly argues that the Court could in fact grant an effective remedy here. A debtor may amend his claims of exemption as a matter of course at any time before his case is closed. Fed.R.Bankr.P. 1009(a). Therefore, if this Court were to vacate the Bankruptcy Court's order and remand with instructions to overrule the Trustee's objection, Goldman could and undoubtedly would simply exercise his right to amend his claim of exemption back to that available under Mass.Gen.L. ch. 235, § 34A. At that point, a favorable decision by this Court would indeed produce an effective remedy for Goldman.

Moreover, there exists the longstanding exception to the mootness doctrine where an issue is "capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pac. Terminal Co. v. ICC,* 219 U.S.

**2.** Trustee Feinman has also filed an objection to this claim of exemption, which objection was

scheduled to be heard by the Bankruptcy Court in December, 1995.

498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *CMM Cable Rep., Inc.*, 48 F.3d at 621–22; *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 4 (1st Cir.1986).

■ The exception applies where there is "a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 [1975]). Indeed, it is reasonable to expect that the controversy will continue to exist as to Goldman. In all likelihood, he will continue to claim full exemption of the IRA under section 34A. That Goldman's present claim pursuant to section 522(d)(10)(E) may be allowed as a result of an upcoming hearing is insignificant. He is entitled to that exemption only to the extent "reasonably necessary for the support" of himself and his wife. 11 U.S.C. § 522(d)(10)(E). Unless the Bankruptcy Court makes the unlikely determination that the *full* value of the IRA, approximately $286,000, meets the reasonably necessary test, Goldman will continue to have reason to pursue the section 34A exemption.

The issue here also meets the "evading review" prong. Because a debtor may amend his claims of exemption at any time prior to the close of his case, Fed.R.Bankr.P. 1009(a), the issue of validity of a claim would in most situations evade review. No thinking debtor would ever give up trying to protect property where there is an alternative exemption scheme, albeit less comprehensive, available. Rather, he would amend his claim, and, believing that the originally claimed exemption promised greater protection (as is the case with Goldman), he would pursue that claim through the appeals process regardless of the protection already secured as a result of the amendment.

The Bankruptcy Code provides for alternative exemption schemes, and the Federal Rules of Bankruptcy permit amendments at any time. For the Court to decline to hear this appeal on mootness grounds would mean that debtors taking advantage of their varied rights, as Goldman seeks to do, would be required to see one claim of exemption all the way through the appeals process prior to trying the alternative. This would create unnecessary gridlock for all involved—debtors, creditors, and trustees. In sum, mootness is not a concern here, and the Court proceeds to the real issue—statutory interpretation.

## B. Mass Gen.L. ch. 235, § 34A

■ On appeal of a final order of the Bankruptcy Court, the district court reviews questions of law *de novo*. *In re DN Associates*, 3 F.3d 512, 515 (1st Cir.1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991); *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir.1990).

■ The issue here is one of interpretation of a state statute, Mass.Gen.L. ch. 235, § 34A. Federal courts follow the interpretation given state statutes by courts of the enacting state. *Aero Mayflower Transit Co. v. Board of Ry. Com'rs.*, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 (1947). The Supreme Judicial Court and the Appeals Court of Massachusetts have yet to rule on the proper construction of section 34A as it relates to the question presented on appeal here. Accordingly, this Court must predict how the Supreme Judicial Court would rule, giving proper regard to decisions of lower Massachusetts courts. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967).

■ The Supreme Judicial Court has held that when statutory language is clear and unambiguous, it must be given its ordinary meaning. *Bronstein v. Prudential Ins. Co. of America*, 390 Mass. 701, 459 N.E.2d 772, 774 (1984). "When the use of the ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history." *Id.* *See also Hashimi v. Kalil*, 388 Mass. 607, 446 N.E.2d 1387 (1983).

■ On the other hand, when the statutory language is ambiguous, the Court may look to legislative intent. *International Org. of Masters, Atl. and Gulf Region, AFL–CIO v. Woods Hole, Martha's Vineyard and Nantucket S.S. Auth.*, 392 Mass. 811, 467 N.E.2d

1331, 1333 (1984). Legislative history and the legal environment in which the statute was drafted provide insight into intent. *Id.* The principle source of such insight, however, is the actual language of the statute. *Id.; Bronstein,* 459 N.E.2d at 774; *Hoffman v. Howmedica, Inc.,* 373 Mass. 32, 364 N.E.2d 1215, 1218 (1977); *Pacific Wool Growers v. Commissioner of Corps. & Taxation,* 305 Mass. 197, 25 N.E.2d 208 (1940).

■ Here, the express language of section 34A is unambiguous. The statute sets forth three categories of retirement vehicles for protection, which are essentially: (1) retirement plans maintained in accordance with ERISA; (2) annuities or similar contracts purchased with assets rolled over from such an ERISA plan; and (3) individually maintained plans, including IRA's. The final sentence of the statute provides that "[t]he exemption ... for plans maintained by an individual shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment." Mass.Gen.L. ch. 235, § 34A. This is clear language. Moreover, by specifying the category to which the limitation on exemption applies ("plans maintained by an individual"), the drafters were about as clear as they could be in their intention that the limitation not be applied to the other two categories.

■ Goldman argues that the "distributed from" language in the second category in the paragraph above, taken in juxtaposition with the "sums deposited" language in the final sentence of section 34A means that an individual IRA plan created from funds distributed from an exempt category, such as category (1) above, is itself exempt. This argument is flawed.

First, as is discussed more fully below, there is no indication from legislative history that the drafters meant anything special in their use of the words "sums deposited." The word "sums" commonly refers to cash money. This usage is not exclusive, however; "sums" also refers to aggregates or quantities of other things. *See* 17 *Oxford English Dictionary* 165–67 (2d ed. 1987). It is therefore quite reasonable to conclude that

other assets, such as mutual fund assets, are covered by the term "sums". Section 34A simply distinguishes between annuities and similar contracts that are products of funds distributed from ERISA plans and those that are not so created. The "distributed from" language does not exclude the possibility that the items distributed could later be "deposited." Indeed, it is common usage that something of value can be distributed from one place and deposited in another.

## C. The Debtor's Arguments

Although this Court rules that the statutory meaning is clear, it is necessary to address briefly the two basic arguments set forth by Goldman.

■ Goldman first argues that the general intent of the Massachusetts legislature was to protect the IRA's and other retirement vehicles of debtors. Goldman expends a good deal of energy here, and points to the caption to section 34A ("Annuities, pensions, profit sharing plans and individual retirement accounts") as evidence of that intent. Indeed, when construing an ambiguous statute, titles and other notations may be useful in determining legislative intent. *Wilcox v. Riverside Park Enter., Inc.,* 505 N.E.2d 526, 530 (1987); *Conlon v. Sawin,* 37 Mass.App. Ct. 545, 641 N.E.2d 707, 709 (1994) *aff'd,* 420 Mass. 735, 651 N.E.2d 1234 (1995). Goldman's citation of the preamble to the Senate Bill that gave rise to section 34A ("An Act Relative to the Protection of Pensions") is of the same ilk. Goldman also cites *In re De-Voe,* 134 B.R. 74 (Bankr.D.Mass.1991), for support of the proposition that section 34A was designed generally to protect retirement funds of debtors. The case indeed provides such support, but contributes nothing else to the instant case.

■ These citations, however, prove the obvious. It makes sense for the Legislature to list in a caption what is covered by the statute, without regard to the uniformity of treatment given each item therein. Of course, the drafters of section 34A intended to protect the listed forms of property. No reasonable observer would conclude otherwise. The question here is, rather, *to what*

*extent* they sought to protect IRA's and other individually maintained plans. On this critical point, the statute, as discussed above, mandates individual, disparate treatment.

■ Goldman's other principle argument concerns the amendments of 1991 and 1992 to the statute. Prior to December 31, 1991, Mass.Gen.L. ch. 235, § 34A read:

> The right or interest of any person in an annuity, pension, profit sharing or other retirement plan *or individual retirement account* maintained in accordance with [ERISA], or in any annuity or similar contract purchased with assets distributed from any of the foregoing, or in any plan maintained by an individual as a Keough Plan or Simplified Employee Plan shall be exempt from the operation of any law relating to insolvency....

1990 Mass. Acts c. 77, § 1 (emphasis added). The last sentence of the current version, containing the seven percent limitation, did not then exist.

The language concerning IRA's did not make sense, however, as IRA's are, by definition, not maintained in accordance with ERISA. *See generally,* I.R.C. § 408(a) (1994). The statute was thus amended as follows:

> The right or interest of any person in any annuity, pension, profit sharing or other retirement plan maintained in accordance with [ERISA] ... *or in an individual retirement account* established and maintained in accordance with Section 408 of the Internal Revenue Code as codified as 26 U.S.C. § 408, or in any annuity or similar contract purchased with assets distributed from any of the foregoing, shall be exempt from the operation of any law relating to insolvency ...

1991 Mass. Acts c. 494, § 4 (emphasis added). The current language concerning the seven percent of income limitation was not included in this amendment.

Then, in 1992, mention of individual retirement accounts was moved to the present position within the "individually maintained plans" category. At the same time, the last sentence, qualifying the exemption of this third category, was added. 1992 Mass. Acts c. 153, § 30.

Goldman's argument as to the amendments' significance is not completely clear. He seems to be arguing that when the Legislature finally decided to limit IRA exemptions in some circumstances, it specifically chose the "sums deposited" language in an effort to distinguish IRA's from the roll-over language that defines the second category of exempt assets. This reasoning has been rejected above.

The series of amendments to section 34A in fact supports the statutory interpretation of the Bankruptcy Court. Prior to the 1991 amendment, section 34A simply did not make sense in its reference to IRA's; it certainly did not distinguish in any way between IRA's that were products of ERISA roll-overs and other IRA's. Prior to the 1992 amendment, the statute fully protected all IRA's that were "established and maintained in accordance with" the section of the Internal Revenue Code that defines individual retirement accounts. When the Legislature enacted the 1992 amendment, it removed the IRA language from its prior position and added it to the "individually maintained" category. Moreover, at the same time as the IRA language moved to a clearly distinct phrase, the Legislature added the income limitation sentence following that phrase. The "distributed from" language, in contrast, has always been attached solely to the treatment of annuities or similar contracts.

■ Goldman's complaint that the Bankruptcy Court ignored traditional rules of statutory interpretation is groundless. His principle argument is that ambiguous bankruptcy exemption statutes are traditionally construed liberally, in favor of the debtor. This is correct. *See In re Link,* 172 B.R. 707, 709 (Bankr.D.Mass.1994); *In re Chiz,* 142 B.R. 592, 593 (Bankr.D.Mass.1992). The Bankruptcy Court was equally correct, however, in determining that the statute was in fact clear and unambiguous. Even were one to conjure up some ambiguity, it makes more sense to conclude that the applicability of the last sentence depends not upon the source of the funds but rather on the nature of the retirement vehicle. What is more,

traditional Massachusetts canons of statutory interpretation call for confining a proviso (here, the seven percent limitation) to the item in a series that immediately precedes the proviso. *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985).

Goldman's reading of section 34A simply does not comport with the plain meaning of the statute's words. It is based on convoluted reasoning, whereas the statute has a plausible, understandable plain meaning.

### D. Annuities and Similar Contracts

■ Although Goldman declined to pursue it, the argument was broached by him briefly that IRA's have been found by courts to be an "annuit[ies] or similar contract[s]" within the meaning of section 34A. He cites *In re Link*, 172 B.R. 707 (Bankr.D.Mass. 1994), *In re Yee*, 147 B.R. 624 (Bankr. D.Mass.1992), and *In re Chiz*, 142 B.R. 592 (Bankr.D.Mass.1992) for this proposition. These cases do not deal with section 34A, however. Rather, they hold that IRA's are "similar plans" to the retirement vehicles that are protected to the extent "reasonably necessary" for the interpretation of 11 U.S.C. § 522(d)(10)(E). *See supra* note 1. This is quite different from a ruling that a specific kind of IRA is a "contract" at all, much less that it is a "contract similar" to an annuity and therefore actually protected as part of the second category of plans set forth in section 34A. Goldman's argument here is not only undeveloped by him, it lacks merit.

### E. ERISA

■ Both sides urged the Bankruptcy Court and the Appellee urges this Court to decide whether the Plan from which the funds used to establish the IRA was maintained in accordance with ERISA. As the Bankruptcy Court declined to address this issue, it is not subject to review by this Court. As this Court affirms the order of the Bankruptcy Court, the ERISA question need not be addressed.

### III. Conclusion

■ As did the Bankruptcy Court, this Court rules that there is no mootness obstacle to taking this appeal, and that the Trust-

ee's interpretation of section 34A is correct. A debtor may claim exemption in an IRA to the extent that it does not exceed seven percent of his total income during the five years prior to bankruptcy filing, pursuant to 11 U.S.C. § 522(b)(2) and Mass.Gen.L. ch. 235, § 34A, regardless of the source of funds. The decision of the Bankruptcy Court sustaining the Trustee's objection to Goldman's claim of full exemption must, therefore, be affirmed.

This Court declines to interpret a clear and unambiguous statute to achieve something different from what the plain meaning dictates. Goldman's legislative intent argument makes sense only in that it is conceivable that a legislative body could seek fully to exempt IRA's rolled over from ERISA plans. Here, however, there is no indication from the language of the statute, the amendments to it, or the legislative materials made part of the record by the Debtor, that this was the intention of the Massachusetts legislature enacting the seven percent limitation in 1992 Mass. Acts c. 153, § 30, amending Mass. Gen.L. ch. 235, § 34A.

The order and decision of the Bankruptcy Court is AFFIRMED.