**ELIAS BROTHERS RESTAURANTS, INC., Plaintiff,**

v.

**ACORN ENTERPRISES, INC., John W. Quilty, and Patricia B. Hannon, Defendants.**

**Civil Action No. 92–12340–WGY.**

United States District Court, D. Massachusetts.

June 20, 1996.

Order Denying Stay July 24, 1996.

Mary M. Born, E. Randolph Tucker, Hill & Barlow, Boston, MA, for Plaintiff.

Stephen Wald, Craig & Macauley, Boston, MA, for Defendants.

### *MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO CHARGE TRUSTEES (# 143) AND CROSS–MOTION FOR DISCHARGE OF ATTACHMENT BY TRUSTEE PROCESS (# 154)*

COLLINGS, United States Magistrate Judge.

### *INTRODUCTION*

For contextual purposes, the relevant post-judgment historical facts shall be recited summarily. These facts are not in dispute.

Judgment in the amount of $272,881.58 entered in favor of the plaintiff, Elias Brothers Restaurants, Inc. ("Elias"), in the underlying action as against the defendants, Acorn Enterprises, Inc., John W. Quilty ("Quilty"), and Patricia B. Hannon ("Hannon"), jointly and severally, on May 4, 1994. (Affidavit of Martha Born, # 139 ¶ 2)[1] Two years there-

---

1. These facts are gleaned from an affidavit filed by plaintiff's attorney. The defendants have recited facts in their opposition that are purportedly summarized from testimony of Quilty and Hannon elicited at a hearing on May 3, 1996. No transcript has been filed, nor has any affida-

after, on May 2, 1996, the total had increased to $297,451, representing the amount of the judgment together with accrued interest. (*Id.*) No monies have been paid by the defendants toward satisfaction of the judgment despite demand upon execution. (# 139 ¶ 3)

In February and March of 1995, orders were issued by the Court pursuant to which Elias served trustee summonses in the amount of $272,881.58 upon The Bank of Braintree, Shawmut Bank, N.A. ("Shawmut") and Plymouth Savings Bank ("Plymouth"). (# 139 ¶ 4) In response to the summonses, The Bank of Braintree answered that it held an IRA for Hannon with a balance of $108,-150.24; Shawmut answered that it had $272,-881.58 in the name of Quilty held in an IRA; and Plymouth answered that Quilty had a bank account with $1,638.84 on deposit. (# 139 ¶¶ 5, 6, 7; Exhs. 1, 2, 3)

The following year, the amount of the trustee attachments were increased as against Fleet Bank, N.A. ("Fleet", successor to Shawmut, now known as Fleet National Bank) and The Bank of Braintree to incorporate accrued post-judgment interest. (# 139 ¶ 8) The Bank of Braintree answered the March, 1996, trustee summons stating that it held $105,003.89 on behalf of Hannon. (# 139 ¶ 11; Exh. 4) Before answering the 1996 trustee summons served upon it, Fleet advised Elias that Quilty had transferred some of the previously attached funds to an IRA at Cambridge Trust Company ("Cambridge Trust"). (# 139 ¶ 9) Pursuant to an order of the Court, on April 17, 1996, the plaintiff served a trustee summons in the amount of $296,890.22 on Cambridge Trust. (# 139 ¶ 10) On April, 19, 1996, Fleet answered the trustee summons to the effect that it held $22,899.01 in the name of Quilty in the form of an IRA over and above the $272,881.58 held in an IRA in Quilty's name

previously subject to the answer by Shawmut.[2] (# 139 ¶ 13; Exh. 6) Five days later, on April 24, 1996, Cambridge Trust answered the trustee summons, stating that it held securities and cash totalling $312,933.03 in Quilty's name in an IRA account.

Elias has filed a motion to charge the banks as trustees (# 143) in order to collect its judgment and accrued post-judgment interest. The defendants oppose the plaintiff's motion and have filed a cross-motion to discharge the attachments by trustee process (# 154). After hearing, the motions are ripe for decision.[3]

## DISCUSSION

Elias contends that it is entitled to satisfy its judgment from the monies held in the defendants' IRAs at Fleet, Cambridge Trust, and The Bank of Braintree pursuant to Massachusetts General Laws chapter 235, which provides in pertinent part:

> The right or interest of any person in an annuity, pension, profit sharing or other retirement plan maintained in accordance with the federal Employee Retirement Income Security Act of 1974, or any annuity or similar contract purchased with assets distributed from any of the foregoing, or in any plan maintained by an individual as a Keough Plan, a Simplified Employee Plan, or an Individual Retirement Account shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person, except as may be necessary to satisfy (i) an order of the court concerning divorce, separate maintenance or child support under chapters two hundred and eight, two hundred and nine, and two hundred and seventy-three or (ii), in the event of the conviction of such person of a crime,

vit in support of these facts been submitted. In any event, it does not appear that any of these facts are contested.

2. On June 7, 1996, Elias filed a Motion To Modify Motion To Charge Fleet (# 163), which was allowed, and a Stipulation, which was approved, to the effect that in the context of the instant motion, Fleet would be charged only in the amount of $153,176.32.

3. During the pre-trial stages of this litigation, the parties consented to have the case reassigned to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). *See Elias Brothers Restaurants, Inc. v. Acorn Enterprises, Inc., et al.*, 831 F.Supp. 920, 921 n. 1 (D.Mass., 1993).

an order of a court requiring him to satisfy a monetary penalty or make restitution to the victim of such crime. **The exemption in this section for plans maintained by an individual shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment.**

Mass.Gen.L. ch. 235, § 34A (emphasis added). While affording complete protection from seizure to pensions maintained in accordance with ERISA absent special circumstances not here pertinent, Elias reads the statute to shield only limited amounts of funds deposited in IRAs. In the plaintiff's view, satisfaction of its judgment with the sums in the individual defendants' IRAs is warranted under this statutory provision to the extent that those sums exceed seven percent of Quilty's and Hannon's total income in the five years prior to May 4, 1994, the date that judgment entered.

The proper interpretation of Mass.Gen.L. ch. 235, § 34A lies at the heart of the present controversy. However, before reaching this issue, it is perhaps best to digress momentarily to address a fundamental argument raised by the defendants.

■ Hannon and Quilty note that the statute governing attachment by trustee process under Massachusetts law reads as follows:

If wages for personal labor or personal services of a defendant are attached for a debt or claim, an amount not exceeding one hundred twenty-five dollars out of the wages then due to the defendant for labor performed or services rendered during each week for such wages are earned but not paid shall be reserved in the hands of the trustee and shall be exempt from such attachment. **Except as otherwise permitted by law, amounts held by a trustee for a defendant in a pension shall be reserved in the hands of the trustee and shall be exempt from attachment. For the purpose of this section, the word "pension" shall mean any annuity, pension, profit sharing or other retirement plan maintained in accordance with the federal Employee Retirement Income Security Act of 1974, or any plan maintained by an individual as a Keough Plan, a Simplified Employee Plan, or an Individual Retirement Account, provided, however, that this definition shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment. The amount reserved under this section shall be paid by the trustee to the defendant in the same manner and at the same time as such amount would have been paid if no such attachment had been made. Every writ of attachment shall contain a statement of the amount exempted from attachment under this section and also a direction to the trustee to pay over the exempted amount as hereinabove provided.**

Mass.Gen.L. ch. 246, § 28 (emphasis added). The defendants assert that ERISA plans, Keoughs, SEPs and IRAs all fall within the meaning of the term "pension" as used in section 28, and, consequently, all four types of retirement plans must be treated in like manner. Such equal treatment requires the Court, in the defendants' view, to construe the statute as completely protecting IRAs from attachment because the seven percent limitation on the exemption is pre-empted by the provisions of ERISA, 29 U.S.C. § 1056(d)(1), as interpreted by the Supreme Court in *Mackey v. Lanier Collection Agency and Service, Inc.*, 486 U.S. 825, 835, 108 S.Ct. 2182, 2188, 100 L.Ed.2d 836 (1988). In other words, IRAs must be treated the same as ERISA plans because both are defined as "pensions" in section 28, and, because federal law prohibits states from altering creditor protections afforded federal pension plans under ERISA, any limitation on the exemption afforded to IRAs similarly is void or pre-empted by ERISA.

The defendants' reading of Mass.Gen.L. ch. 246, § 28 is quite simply not persuasive. First, Elias observes that Mass.Gen.L. ch. 235, § 34A was amended in 1992 to permit creditors to attach and seize certain limited amounts held by debtors in IRAs. *See, In Re Goldman*, 192 B.R. 1, 7 (D.Mass.1996).

The trustee process statute, Mass.Gen.L. ch. 246, § 28, was also amended that same year tracking the alteration incorporated in Mass. Gen.L. ch. 235, § 34A. Both statutes now provide, verbatim, that the exemption provided in each "shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment."

Second, in the context of Mass.Gen.L. ch. 246, § 28, the word "plans" in the immediately preceding quote refers to "any plan maintained by an individual as a Keough Plan, a Simplified Employee Plan, or an Individual Retirement Account", the phrase directly antecedent. Thus, although an IRA falls within the definition of "pension" in the statute such that it is covered by the general exemption, "[e]xcept as otherwise permitted by law, amounts held by a trustee for a defendant in a pension shall be reserved in the hands of the trustee and shall be exempt from attachment", the law continues by limiting this exemption with respect to Keoughs, SEPs and IRAs, i.e., "said plans", by permitting the attachment of "sums deposited . . . in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment." This construction of the statutory provision makes sense and is consistent with the provision at Mass.Gen.L. ch. 235, § 34A.

Based upon this discussion, the defendants' interpretation of the effect of Mass.Gen.L. ch. 246, § 28 must be rejected; this statutory provision does not serve to shield IRAs in their entirety from seizure by creditors. Moreover, this provision in relevant part parallels the provision in Mass.Gen.L. ch. 235, § 34A and, consequently, both statutes should be applied in comparable fashion.

 Elias relies upon the *In Re Goldman* decision as support for its position that Mass. Gen.L. ch. 235, § 34A enables it to seize the defendants' IRAs on execution.[4] Affirming the bankruptcy court decision, Judge Young found "that the statute was in fact clear and

unambiguous". *In Re Goldman,* 192 B.R. at 7. Further, it was determined that individually maintained IRAs were subject to seizure with the seven percent of income limitation, and "that the applicability of the last sentence [of § 34A] depends not upon the source of the funds but rather on the nature of the retirement vehicle." *Id.; See also, In Re Barshak,* 185 B.R. 210, 212–3 (E.D.Penn., 1995). To explain more fully, it is the fact that the retirement plan is an IRA maintained by an individual that is significant when considering whether the limitation on exemption applies rather than the way in which the retirement plan has been funded, i.e., whether a rollover from another retirement plan or a direct deposit.

 Having independently reviewed the statute, the Court agrees with Judge Young's analysis in the *Goldman* decision. Applying that statutory construction to the facts of the instant case, it is irrelevant that Hannon's and Quilty's IRAs were funded by rollovers from a 401(k) plan, or by transfers of funds from other IRAs. In short, under Mass. Gen.L. ch. 235, § 34A, Elias is entitled to satisfy its judgment out of the monies on deposit in Quilty's and Hannon's IRAs to the extent that those sums do not exceed seven percent of their total income in the five years prior to the entry of judgment, May 4, 1994.

The defendants argue that Mass.Gen.L. ch. 246, § 28 and Mass.Gen.L. ch. 235, § 34A are ambiguous in several respects. For example, although it is asserted that section 28 defines both an IRA and an ERISA plan as pensions, and section 34A appears to distinguish between the two, as previously discussed hereinabove, these statutes can readily be construed in a congruent fashion. Next, it is noted that both statutory provisions refer to a five-year period, and the defendants question whether that time frame applies only to the period during which total income is to be calculated or whether it also defines the period during which sums must be deposited into the IRAs. For purposes of this case, the question need not be addressed because the IRAs were funded within five years of the

---

**4.** *In Re Goldman* was a bankruptcy proceeding. The reasoning of that case is fully applicable herein because the limitation on exemption language in the statute references both "declaration of bankruptcy or entry of judgment." *See,* Mass. Gen.L. ch. 235, § 34A.

entry of judgment, or, in one instance, after judgment had in fact entered.

Similarly, it is irrelevant for present purposes how these statutes would apply, if at all, in a prejudgment situation because the application in this case is strictly post-judgment. Moreover, the issue of how section 28 is to be applied in a bankruptcy action is not raised by the facts of this case, and so will not be reached. Although the defendants' contention with respect to a potential ambiguity vis-a-vis the meaning of the term "total income" requires more extensive discussion, the bottom line is that again, in the circumstances of this case, even defining the term in the light most favorable to the defendants, it quite simply will not make a difference in the outcome.

From the plaintiff's perspective, the term "total income" should have the same meaning as it does on Form 1040 of the Internal Revenue Service. Under this definition, because Quilty listed his total income on his income tax forms from 1989 through 1994 in negative amounts (# 139 ¶¶ 19, 20, 23; Exhs. 11, 12, 15), Elias contends that he is not entitled to any exemption because seven percent of zero is zero. As regards Hannon, Elias calculates her reported total income on her personal income tax forms in the aggregate, from 1989 through 1994, including negative amounts, to equal $43,248, while excluding negative amounts, to equal $51,401.[5] (# 139 ¶¶ 21, 22, 24; Exhs. 13, 14, 16) At best, according to the plaintiff, Hannon is entitled to an exemption of $3,598.07, seven percent of the higher aggregate total income. Elias has already stipulated to a $10,000 exemption for Hannon which was taken into account by The Bank of Braintree in its answer to the trustee summons. (# 139 ¶ 11, Exh. 4)

To paint the most favorable picture for the defendants, it could be assumed, arguendo, that total income should be defined to mean all positive income figures with no consideration of losses or negative numbers. Such a method of calculation would yield for the defendants the highest possible "total income", and, hence, the highest possible exemption. In performing the mathematics applying a calendar year method, i.e., prorating the income for 1989 and 1994, Quilty would have an aggregate total income of $401,-389.12, seven percent of which would result in an exemption of $28,097.24. Under a tax year method, i.e., not considering income from 1994, Quilty would have an aggregate total income of $411,158.00, and thus a seven percent exemption of $28,781.06. With respect to Hannon, under a calendar year method of calculation, she had an aggregate total income over the five year period of $253,705.76 resulting in a $17,759.40 exemption. Alternatively, considering just the tax years from 1989 through 1993 inclusive, Hannon had an aggregate total income of $265,-374.00, seven percent of which equals $18,-576.18.

If the highest exemption figures are utilized for the benefit of the defendants, the calculations would be as follows: With respect to Quilty's IRA at Cambridge Trust, $296,890.22 has been attached, minus an exemption of $28,781.06, leaving $268,109.16; at Fleet, the stipulated $153,176.32 has been attached in an IRA account under Quilty's name, minus the exemption of $28,781.06, leaving $124,395.26. As regards Hannon, $105,003.89 has been attached in an IRA at The Bank of Braintree already taking into account a $10,000.00 exemption, thus, subtracting a further $8,576.18 to reach a total exemption of $18,576.18, a total of $96,427.71 remains. In total, after the maximum possible exemptions are subtracted in favor of the defendants, $488,932.13 remains attached in the defendants' IRAs, plus the additional $1,638.84 in Quilty's bank account at Plymouth, together a sum more than sufficient to

5. In doing the mathematics, it appears as though Elias included the full amount of total income listed on the Hannon's 1994 tax form. It is not clear that income after the entry of judgment, i.e., May, 1994, should be considered. In other words, is the statutory reference to calendar years, in which case the income in 1989 and 1994 should be prorated in calculating the total income in a five year period (May, 1989–April, 1994) or tax years, in which case the income in 1994 would not be considered at all, the relevant five years being 1989, 1990, 1991, 1992, and 1993? Given the circumstances of this case, this is not an outcome-determinative question, and is merely noted in passing.

satisfy the plaintiff's judgment plus accrued interest.

■ These calculations demonstrate that for present purposes, the term "total income" need not be precisely defined. Even interpreting the term "total income" in a manner so as best to benefit the defendants and subtracting the maximum exemptions in their favor, a fund far outstanding the amount necessary to satisfy the judgment remains attached in the hands of the trustees and available to the plaintiff in order to satisfy its judgment.

■ As a final point, the defendants argue that Elias' motion should be denied because the writs that it served on the trustees were defective in that the 1995 writs made no reference to exemptions at all, and the 1996 writ with respect to Hannon stipulates to an arbitrary figure for an exemption. Any errors in the 1995 writs are inconsequential because it is the 1996 writs that are operative. To the extent that there were errors in calculating the amount of the exemptions to which the defendants are entitled such that the figures incorporated in the writs were wrong, the defendants have not shown that they have in any way been harmed or prejudiced as a consequence.

### CONCLUSION AND ORDER

For all of the reasons stated, it is ORDERED that the Plaintiff's Motion To Charge Trustees (# 143) be, and the same hereby is, ALLOWED to the extent that Cambridge Trust Company is charged in the amount of $268,109.16, The Bank of Braintree is charged in the amount of $96,427.71, Fleet National Bank is charged in the amount of $124,395.26, and Plymouth Savings Bank is charged in the amount of $1,638.84, and otherwise, DENIED. Further, it is ORDERED that the defendants' Motion For Discharge Of Attachment By Trustee Process (# 154) be, and the same hereby is, DENIED.

1. This case has been referred and reassigned to the undersigned, with the parties' consent, pursuant to 28 U.S.C. § 636(c). The trustees, too, have consented pursuant to this statutory provision to have the undersigned enter judgment against them.

### MEMORANDUM AND ORDER ON DEFENDANTS' EMERGENCY MOTION TO STAY ISSUANCE OF TRUSTEE EXECUTIONS (# 169)

COLLINGS, United States Magistrate Judge.

On June 20, 1996, the motion to charge trustees filed by the plaintiff, Elias Brothers Restaurants, Inc. ("Elias"), was allowed, and the concomitant motion to discharge attachment by trustee process filed by the defendants, Acorn Enterprises, Inc. ("Acorn"), John W. Quilty ("Quilty"), and Patricia B. Hannon ("Hannon"), was denied. One week later, the defendants filed their Emergency Motion To Stay Issuance of Trustee Executions (# 169), which Elias opposes. (# 171) After oral argument, as well as a review of the parties' written submissions and the pertinent law, the defendants' motion is ripe for decision.[1]

The defendants' primary contention is that Rules 62 and 69 of the Federal Rules of Civil Procedure mandate that state law shall control post-judgment procedures employed to enforce a judgment. Under Massachusetts law, "[n]o execution shall issue upon a judgment until the exhaustion of all possible appellate review thereof, and the receipt by the clerk of the trial court of the appropriate rescript or order." Mass.Gen.L. ch. 235, § 16. Having filed a timely notice of appeal of the Court's June 20th Order, the defendants argue the judgment has been automatically stayed and that they are entitled to press their appeal without posting any security.

■ Elias totally disagrees. At the outset, the plaintiff asserts that the defendants' motion is premature in that no judgment has as yet been entered against the trustees, a condition precedent to the issuance of trustee executions.[2] See, Fed.R.Civ.P. 62(a), 58(a) and 79(a); Mass.R.Civ.P. 62(a), 58(a) and 79(a); Gabovitch v. Lundy, 584 F.2d 559, 561

2. The executions earlier issued against the defendants are of no force or effect as against the trustees. See, Gabovitch v. Lundy, 584 F.2d 559, 560–1 (1 Cir.,1978).

(1 Cir., 1978); *Arthur D. Little, Inc. v. East Cambridge Savings Bank,* 35 Mass.App.Ct. 734, 738–9, 625 N.E.2d 1383, 1386–7 (1994). While this point is well taken, judgment shall be entering in accordance with the Court's June 20th Order posthaste, and action will then be required on the defendants' motion. With the record complete at this juncture, in the interest of judicial economy, the merits of the defendants' argument shall be addressed herein.

■ Pursuant to the pertinent part of Rule 69, Fed.R.Civ.P.:

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy, **except that any statute of the United States governs to the extent that it is applicable** ...

Fed.R.Civ.P. 69(a) (emphasis added).

In the instant case, it is unnecessary to resort to state law, i.e., Mass.R.Civ.P. 62(a)[3], because there is a federal statute that controls, to wit, Fed.R.Civ.P. 62(a). Indeed, the Second Circuit has had occasion to

note that Rule 69(a) adopts state procedures for execution only to the extent that they do not conflict with any applicable "statute of the United States." This term includes the Federal Rules of Civil Procedure, since they have the force and effect of federal statutes. 28 U.S.C.A. § 2072 (West 1994); *see also, Oklahoma Radio*

*Assocs. v. Fed. Deposit Ins. Corp.,* 969 F.2d 940, 942 (10th Cir., 1992); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012 (1973 & 1994 Supp.). Thus, under Rule 69(a) "if there is an applicable federal statute, it is controlling, as is also any relevant Civil Rule, since those rules have the force of statute." Wright & Miller § 3012.

*Schneider v. National Railroad Passenger Corp.,* 72 F.3d 17, 19 (2 Cir., 1995); *See also, Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1226 (7 Cir., 1993) ("The reference in Rule 69(a) to applicable federal statutes appears to reference federal statutes expressly governing execution ... a category that would presumably comprehend any rule regulating execution, such as Rule 62(a), but not the rules of procedure or of evidence in gross.")[4]

In short, the federal, not the state rule governs in these circumstances.

■ Rule 62(a), Fed.R.Civ.P., reads, in relevant part:

(a) Automatic Stay; Exceptions—Injunctions, Receiverships, and Patent Accountings. Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry ...

Applying the plain terms of this rule, the trustee executions will issue ten days subsequent to the entry of judgment against the trustees. Defendants' next argument notwithstanding, they are not entitled to a stay of the executions under Rule 62(f), Fed. R.Civ.P.,[5] because, apparently unlike Louisiana law upon which they rely, under Massa-

---

**3.** Rule 62(a), Mass.R.Civ.P., provides as follows:
(a) Automatic Stay; Exceptions—Injunctions and Receiverships. Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the time for appeal from the judgment has expired ...
This rule differs from its federal counterpart.

**4.** Thus, although the Second and Seventh Circuits may not fully agree as to how Rule 69(a) should be interpreted, both courts concur that the federal statutes referenced therein would include Fed.R.Civ.P. 62(a).

**5.** This rule provides as follows:

(f) Stay According to State Law. In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such a stay as would be accorded the judgment debtor had the action been maintained in the courts of that state.

Rule 62(f), Fed.R.Civ.P.

chusetts law, a judgment alone is not, in the words of the Rule, "a lien upon the property of the judgment debtor." *Smith Barney, Harris Upham & Co., Inc., v. Connolly*, 887 F.Supp. 337, 345 (D.Mass., 1994) citing *L. Rudolph Electrical Co., Inc. v. Gibbs Oil Company*, 16 Mass.App.Ct. 995, 454 N.E.2d 1288 (1983). In Massachusetts, a judgment **plus** an attachment is necessary to create such a lien. *L. Rudolph Electrical Co., Inc.*, 16 Mass.App.Ct. at 995–6, 454 N.E.2d at 1288–9. Put another way, in Massachusetts, as in Connecticut, "[f]urther steps beyond mere ministerial acts must be taken to transform a judgment into a lien." *Marandino v. D'Elia & JOFR Assoc., Inc.*, 151 F.R.D. 227, 229 (D.Conn., 1993). It does not matter that the executions which are sought to be stayed in the instant case are on a judgment against trustees after issuance of trustee process and an order charging the trustees; the judgment in and of itself is not a lien under Massachusetts law.

To the extent that the defendants seek a stay while their appeal is pending, it is incumbent upon them to give a supersedeas bond as provided in Rule 62(d), Fed.R.Civ.P. *Marandino*, 151 F.R.D. at 229. There is no basis, in the circumstances of this case, for the Court, in its discretion, to deviate from the ordinary and usual procedure in this regard.[6]

For all the reasons stated, it is OR-DERED that the Defendants' Emergency Motion To Stay Issuance Of Trustee Executions (# 169) be, and the same hereby is, DENIED as drafted. Judgment against the trustees will enter this date; defendants may obtain a stay upon the posting and approval of a supersedeas bond in accordance with Rule 62(d), Fed.R.Civ.P.

**6.** This is particularly so in light of the Massachusetts statute that reads:

> If the goods, effects and credits in the hands of a person adjudged a trustee are not demanded of him by force of the execution within thirty days after final judgment, they shall be liable to another attachment, whether made before or after judgment; or if there has been no such second attachment, they may be recovered by the defendant.

Mass.Gen.L. ch. 246, § 40.

At present, U.S. Trust has a judgment dated June 1, 1994, against John W. Quilty in the amount of $250,692.02.